**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

FRANK ANDOLINA,

                              Plaintiff,

                - v -                                Civ. No. 9:09-CV-379
                                                            (TJM/RFT)

DEBORAH KENNY, CO BURNS,

                              Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

FRANK ANDOLINA
Plaintiff, *pro se*
302 Green Valley Road
Staten Island, NY 10312

HON. ANDREW M. CUOMO                    JUSTIN C. LEVIN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

     Presently before the Court is *pro se* Plaintiff Frank Andolina's civil rights Complaint, brought pursuant to 42 U.S.C. § 1983 and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104-191, 110 Stat. 1936, in which he alleges violations of his Fourteenth and Eighth Amendment rights stemming from the improper disclosure of his medical files and harassments that followed. Dkt. No. 1, Compl. at pp. 3-4. Defendants have moved for dismissal of the Complaint pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 17. Plaintiff opposes the Motion. Dkt. No. 18. For the reasons that follow, it is recommended that the Defendants' Motion be **granted**.

## I. BACKGROUND

For the purposes of recommending a disposition on Defendants' Motion, and in accordance with the applicable standard of review, we assume the facts alleged in the Complaint to be true. *See infra* Part II.A.

On March 25, 2006, while Plaintiff was in the Riverview Correction Facility's Medical Clinic[1] in order to pick up his medication, Defendant Corrections Officer (C.O.) Burns asked Defendant Nurse Deborah Kenny to check and see if Plaintiff was to receive medication. Compl. at p. 3. Without Plaintiff's consent, Kenny handed Plaintiff's medical file to Burns, who proceeded to read through the file, viewing Plaintiff's confidential medical information. *Id.*

Plaintiff asserts that after Burns read his file, he subjected Plaintiff to constant verbal abuse, harassment, and humiliation. For example, when Plaintiff entered the crowded mess hall on March 26, 2006, Burns yelled across the room, "Hey limpdick[!] What's the matter can't get it up?" *Id.* at pp. 3-4. Plaintiff alleges Burns has continued to harass, abuse, and humiliate him ever since. *Id.* at p. 4.

Plaintiff seeks compensatory, punitive, and injunctive relief against Defendants. *Id.* at p. 5.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will

---

[1] Plaintiff has since been released from Department of Correctional Services's custody. Information *available at* http://nysdocslookup.docs.state.ny.us.

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

### B. § 1983 Claims/Statute of Limitations

Defendants assert that Plaintiff's § 1983 claims are time-barred by the statute of limitations. Dkt. No. 17, Defs.' Mot. to Dismiss, at pp. 3-4. In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). In New York, a three-year statute of limitations applies for personal injury actions, and thus to § 1983 actions as well. *Id.*; *see also* N.Y.C.P.L.R. § 214(5). Federal constitutional claims accrue when the plaintiff "knows or has reason to know" of the injury that is the basis for his action. *Pauk v. Bd. of Tr. of City Univ. of New York*, 654 F.2d 856, 859 (2d Cir. 1981); *see also Connolly v. McCall*, 254 F.3d 36, 40-41(2d Cir. 2001).

Plaintiff asserts his constitutional rights were violated on March 25, 2006, when Kenny allowed Burns to peruse Plaintiff's medical files, and on March 26, 2006, when Burns harassed and

taunted Plaintiff.² Compl. at pp. 3-4. Plaintiff knew or had reason to know of any alleged injuries flowing from those actions at the time they occurred. Thus, Plaintiff's § 1983 claims accrued, at the latest, on March 26, 2006. Plaintiff's Complaint, dated March 26, 2009, and marked notarized on that same date, was not postmarked until March 31, 2009, and was thereafter received and docketed by the Clerk of the Court on April 2, 2009. Dkt. No. 1, Compl. Pursuant to the "prison mailbox rule," a prisoner is deemed to have filed his legal papers on the date he gives them to prison officials for mailing to the court. *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (citations omitted); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (applying rule to § 1983 complaints filed by state prisoners). Plaintiff does not allege that he entrusted his Complaint to a prison official for mailing prior to March 31, 2009, the date his Complaint was postmarked. Indeed, Plaintiff admits that there was a five day delay from March 26 through March 31, 2009, for which he provides the following explanation: "I was awaiting access to the facility Law Library, because of the weekend scheduling, further the claim was sent to my home, to my family's which then had to be [forwarded] to the judge, it had to be done in this fashion because of my [indigence], due to the registered mailing rule." Dkt. No. 18, Pl.'s Resp. at p. 2. Also, in a letter to the Court, dated March 31, 2009, Andolina admitted that his "recent filing to your office may have been a little late due to the fact that this is a reception facility and there is a notary only once a week. I hope that this letter serves in purpose to ask that my filing for this claim is not denied because of that reason." Dkt. No. 5, Lt., dated Mar. 31, 2009 (docketed on Apr. 3, 2009). Thus, Plaintiff does not assert that his Complaint was timely submitted to prison officials for mailing on or before March 26, 2009, the date the statute of

---

² To the extent Plaintiff alleges in his Complaint that Burns continued his harassments after March 26, 2006, such claim is conclusory in that it fails to give any facts regarding any specific incidents that occurred after March 26th. *See Bell. Atl. Corp. v. Twombly*, 550 U.S. at 545 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level").

limitations expired. Rather, he admits that the filing of his Complaint was delayed until March 31, 2009, five days after the statute of limitations expired. His Complaint was postmarked March 31, 2009, and received by the Court two days later on April 2, 2009. Thus, there was no delay in the mail service once the Complaint was sent. As such, Plaintiff's § 1983 claims were untimely filed and are barred by the applicable statute of limitations, unless there is a basis for tolling.

Unlike the time of accrual for § 1983 claims, which is determined by federal law, "state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see also Kulpa on Behalf of Kulpa v. Glass*, 903 F. Supp. 321, 322-23 (N.D.N.Y. 1995) ("Section 1983 actions import not only their statute of limitations but also any applicable tolling mechanisms, not inconsistent with the statutory purpose, from state law." (citing *Board of Regents v. Tomanio*, 466 U.S. 478, 485-86 (1980))). In this case, Plaintiff proffers no basis, under New York law or otherwise, on which to deem the statute of limitations tolled.

However, Plaintiff has stated, albeit without much detail, certain justifications for his untimely filing. First, Plaintiff asserts that he "was awaiting access to the facility Law Library, because of the weekend scheduling, further the claim was sent to my home, to my family's which then had to be [forwarded] to the judge, it had to be done in this fashion because of my [indigence], due to the registered mailing rule." Dkt. No. 18, Pl.'s Resp. at p. 2. Second, he states that the Complaint "may have been a little late due to the fact that this is a reception facility and there is a notary only once a week." Dkt. No. 5, Lt., dated Mar. 31, 2009. We construe these justifications liberally as arguments for the application of the doctrine of equitable tolling.

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d at 642 (quoting *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565 (N.Y. App. Div. 3rd Dep't 2005)). Here, Plaintiff makes no allegation of fraud, misrepresentations, or deception on the part of Defendants or anyone else. Plaintiff does not allege that there was any interference with his access to a notary or to the law library, nor with his postage once mailed. The fact that a prisoner does not, by virtue of his confinement, have twenty-four-hour-a-day access to the law library or a notary is not a basis for tolling the statute of limitations. *See Cotto v. Pabon*, 2008 WL 4962986, at *12 (S.D.N.Y. Nov. 20, 2008) (refusing to equitably toll an untimely § 1983 claim due to plaintiff's alleged difficulties in accessing the prison's law library); *see also Asencio v. Senkowski*, 2000 WL 1760908, at *2 (S.D.N.Y. Nov. 30, 2000) & *Grant v. Goord*, 430 F. Supp. 2d 135, 139 (W.D.N.Y. 2006) (holding that normal hardships and difficulties associated with prison life do not constitute the "extraordinary circumstances" necessary to equitably toll an untimely *habeas corpus* petition under 28 U.S.C. § 2254).[3] There are many reasons, both penological and cost-related, why

---

[3] The Second Circuit has repeatedly stated that pursuant to the Supreme Court's decision in *Board of Regents v. Tomanio,* 466 U.S. 478, 485-86 (1980), federal courts must apply state court tolling rules in § 1983 actions. *See Abbas v. Dixon,* 480 F.3d at 642; *see also Pearl v. City of Long Beach*, 296 F.3d at 80. However, the Second Circuit has also applied the "extraordinary circumstances" standard, which is applicable in *habeas corpus* petitions brought pursuant to 28 U.S.C. § 2254, to § 1983 actions. *See Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (finding that no "extraordinary circumstances" existed to justify tolling of a prisoner's § 1983 claim); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (holding that § 2254(d)'s one year period is not a jurisdictional bar, and therefore, that courts may equitably toll the period if a petitioner can show "that extraordinary circumstances prevented him from filing his petition on time"). For that reason, it seems, several district courts in this Circuit have referred to the "extraordinary circumstances" standard when considering tolling arguments brought by prisoners who have filed untimely § 1983 claims. *See, e.g., Griffith v. Sadri*, 2009 WL 2524961, at *3 (E.D.N.Y. Aug. 14, 2009) (applying "extraordinary circumstances" standard to § 1983 claim and citing to *Walker v. Jastremski*). Based on the Second Circuit's interpretation of *Board of Regents v. Tomanio,* we believe that equitable tolling arguments raised in § 1983 claims are properly analyzed pursuant to the applicable state law, except when doing so would undermine the purpose of § 1983. *See Pearl v. City of Long Beach*, 296 F.3d at 80; *see also Abbas v. Dixon*, 480 F.3d at 642. However, we cite to cases
(continued...)

prisons must limit the provision of such services, and prisoners must therefore plan accordingly or risk the possibility of making untimely legal filings. Furthermore, the Court is not aware of the "registered mailing rule" to which Plaintiff refers in his Response. Prisoners are free to mail complaints and other legal filings directly with the Court and need not send their mail through a third party that is outside the prison. Indeed, pursuant to the aforementioned "prison mailbox rule," such mailings are deemed filed on the date a prisoner submits his outgoing legal mail to a prison official. In this case, Plaintiff does not allege that he entrusted his Complaint to a prison official prior to the expiration of the statute of limitations. Rather, he has acknowledged the delay in his filing without providing any legitimate justification for it.

Therefore, absent any basis to deem the statute of limitations tolled, we find Plaintiff's § 1983 claims are time-barred and recommend **dismissal** of those claims for that reason.

### C. HIPAA Claim

Plaintiff asserts that the Defendants' disclosure of his medical information/condition violates HIPAA. However, as Defendants point out, HIPAA does not provide the basis of a cause of action for private individuals. *Byng v. Campbell*, 2008 WL 4662349, at *3 (N.D.N.Y. Oct. 20, 2008) (citing cases). Rather, HIPAA enables the Secretary of Health and Human Services to enforce its provisions. *See Pecuo v. Forensic Comm. Personnel*, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007) (citing 42 U.S.C. § 1320d-6(a)(2) & (3)). As such, Plaintiff does not have standing to bring a claim under HIPPA.

Therefore, it is recommended that Plaintiff's HIPAA claim be **dismissed** as futile.

---

³(...continued)
employing the "extraordinary circumstances" language to show that even under that more forgiving standard, which does not necessarily require a showing of fraud or other improper actions on the part of a defendant, Plaintiff has still not met his burden.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 17) be **GRANTED** and the Complaint (Dkt. No. 1) **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  February 5, 2010
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge